THE STATE OF OHIO, APPELLEE, v. NEFF, APPELLANT.
THE STATE OF OHIO, APPELLEE, v. DOHL, APPELLANT.

(Nos. 74-411 and 74-412—Decided January 22, 1975.)

Mr. Ronald J. Kane, prosecuting attorney, and Mr. Kenneth N. Bailey, for appellee.

Messrs. Mueller, Musitano & Haney and Mr. Thomas S. Haney, for appellants.

Per Curiam. In State v. Williams (1974), 39 Ohio St. 2d 20, a case certified to this court by the Court of Appeals

for Portage County, this court said, "by virtue of Section 6, Rule III of this court's Rules of Practice, when a case is certified to this court upon the constitutional basis of conflict, the rule of law upon which that conflict exists must be 'clearly set forth in the journal entry or opinion of the Court of Appeals;' otherwise a remand to the Court of Appeals can result."

Here, the journal entries certifying the causes to this court do not indicate any rule of law upon which a conflict is claimed to exist as required by the Rules of this court. The entries of the Court of Appeals simply recite, "appellant's motion to certify on grounds, of conflict allowed" and "appellant's motion to certify to the Supreme Court allowed."

However, in the interests of judicial economy, we proceed to the merits of these cases.[1]

*State* v. *Myers* (1955), 164 Ohio St. 273, involved a prosecution for violation of R. C. 4511.21 in which defendant claimed his speed was "reasonable and proper under the circumstances." This court said, in *Myers*, that *the sole issue* presented by the record "is whether the evidence is sufficient to warrant the trial court's finding of guilty."

What is "reasonable and proper under the circumstances," within the meaning of R. C. 4511.21, is a question of fact. Where there is sufficient evidence to support a finding of guilty, a conviction will not be set aside. The records before this court show sufficient evidence to support the conviction of each defendant.

The judgments of the Court of Appeals are affirmed on authority of *State* v. *Myers, supra.*

*Judgments affirmed.*

O'NEILL, C. J., HERBERT, STERN and CELEBREZZE, JJ., concur.

CORRIGAN, W. BROWN and P. BROWN, JJ., dissent.

---

[1] Counsel should not rely upon our waiving compliance with Section 6 of Rule III; nor should a Court of Appeals. The rule has an obvious and salutary purpose and it should be scrupulously followed.

CORRIGAN, J., dissenting. Convictions of these two experienced over-the-road drivers for speeding are being affirmed by this court by journal entry.

In view of the thousands of people arrested each month for speeding[2], their livelihoods, their families, and their utter frustrations in defending against such arrests, I am of the mind that the questions presented are deserving of a more critical, sustained look.

Both defendants were found guilty of violating R. C. 4511.21, which reads, in pertinent part:

"No person shall operate a motor vehicle * * * in and upon the streets and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions * * *.

"It is prima-facie lawful for the operator of a motor vehicle * * * to operate the same at a speed not exceeding the following:

"* * *

"(I) Seventy miles per hour at all times on freeways outside municipal corporations except fifty-five miles per hour for operators of trucks and commercial tractors weighing in excess of four thousand pounds empty * * *.

"It is prima-facie unlawful for any person to exceed any of the speed limitations in Sections 4511.01 to 4511.78 and 4511.99 of the Revised Code. * * *"

Under this speeding statute, to indulge in some rudiments of criminal evidence, each essential element of the charge must be proved beyond a reasonable doubt. The es-

---

[2] According to the publicity release of the State Highway Patrol appearing in the Columbus Dispatch on November 13, 1974, the patrol made 28,934 speeding arrests in June 1974.

Forty-five per cent of the revenues for these speeding tickets goes to the state and fifty-five per cent to the political jurisdiction in which the court that handles the case is located. Usually, according to the Highway Patrol spokesman, approximately one-third of those arrested for speeding by the patrol are truckers.

Added to these speeding arrests, of course, are those made by urban police officers, village police, township police, marshals and deputy sheriffs.

sential elements of R. C. 4511.21, as charged in these two cases, are:
(1) Operating a motor vehicle;
(2) Upon the streets or highways;
(3) Faster than reasonable or proper with due regard to traffic, surface, width of the road and other conditions;
(4) Venue.

Each defendant was clocked at 66 miles per hour, which was 11 miles per hour over the speed limit, and therefore prima facie unlawful. Whenever, as here, the amount of evidence necessary to make a prima facie case is determined by law, the rule may be called a presumption of law. However, it is a rebuttable presumption of law and casts upon the party, against whom it operates, the duty of going forward with evidence to show that such a speed of 66 miles per hour was reasonable and proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions. This the defendant clearly did in each case, and overcame the presumption created by the prima facie speed limit of 55 miles per hour.

It might be well, before briefly reviewing the record in each case, to define the terms, "reasonable" and "proper." There is nothing cryptic about either word. "Reasonable" means amenable to sound sense or good judgment. "Proper" suggests a fitness or suitability dictated by good judgment which accords with the requirements or needs of the occasion or circumstances.

In case No. 74-411, defendant, Brian Neff, a long-distance truck driver, was driving his 42-foot tractor-trailer rig eastbound in I 76. I 76 consists of four lanes of travel at the area where the arrest was made, two for eastbound traffic and two for westbound traffic. Each set of lanes is constructed of concrete and is 24 feet wide. Each was in good repair at the time.

The two sets of travel lanes are separated by a grass median strip about 50 feet in width. Median cross-overs are prohibited. The right of way is fenced in on both sides and there is no development within the fenced area. The highway may be entered and exited on ramps spaced about five miles apart.

It was about 1:00 p. m. on June 25, 1973. The day was bright and sunny, the pavement was dry and the visibility good. The road was straight, and defendant was starting to pull a long grade. The only traffic on the two eastbound lanes at the time and place was another tractor-trailer, also eastbound, which Neff passed. The highway patrolman was operating a Vascar speed measuring device from a patrol car parked on the right-hand berm of the west bound set of lanes.

The officer testified that the passing of the other tractor-trailer was done safely. Upon accomplishing the passing, Neff moved immediately into the right-hand or driving lane. Neff stopped as soon as the officer flashed his red pursuit lights. The officer testified further that, except for the speed of 66 miles per hour, as Vascar registered it, he would have had no reason to stop the defendant.

The trial court, the Kent Division of Portage County Municipal Court, found Neff "guilty," observing that defendant's passing the other rig made his speed of 66 miles per hour "unreasonable for conditions."

The Court of Appeals affirmed Neff's conviction and then certified its judgment to this court as being in conflict with Courts of Appeals' decisions of the Third Appellate District in *State* v. *Buckner,* case No. 1-73-94, unreported decision of the Court of Appeals for Allen County, January 31, 1974, and *State* v. *Mansfield,* case No. 456, unreported decision of the Court of Appeals for Ashland County, April 5, 1960.

In case No. 74-412, defendant, Leonard H. Dohl, is a full-time truck driver who logs in excess of 100,000 miles each year. He was driving a commercial tractor-trailer unit west on I 76, bound for Akron. The road consists of two east and two westbound concrete lanes, each set of lanes being 24 feet wide and separated by a grass median strip. It was a rural region and defendant was approaching a roadside rest area.

The date was January 22, 1973, and the time was about 1:06 p. m. The pavement was dry, the day clear, visibility good and traffic moderate. There was one car some distance ahead of defendant, also moving west, after defendant

passed a van-type truck. The highway patrolman was headed east on the opposite side of the median strip and clocked defendant with a Vascar device at 66 miles per hour as he was passing the van-type truck. The passing was made safely and the defendant moved back into the driving lane. There was no accident, no weaving from lane to lane or other reckless conduct observed. The officer stopped defendant after a short chase by turning on the red pursuit lights on the police car. The speed of the defendant, and only the speed, was the officer's reason for stopping him.

The trial court, the Ravenna Division of Portage County Municipal Court, found Dohl "guilty" as charged, and commented that the incident happened near a rest area on I 76. This latter fact is of absolutely no consequence as to whether the speed was reasonable or proper because there were no vehicles entering or leaving the rest area at the time.

The Court of Appeals affirmed the conviction and certified its judgment as being in conflict with the judgment in *State* v. *Buckner, supra.*

The question for this court to determine in each of these cases is: Did the state adduce sufficient evidence, bearing in mind its burden of proving defendants guilty beyond a reasonable doubt in each essential element of the offense charged, to justify a finding by the trial court that the speed of 66 miles per hour was "greater than is reasonable or proper having due regard to the traffic, surface, width of the highway and any other conditions"?

R. C. 2953.02 provides that "[t]he Supreme Court in criminal cases shall not be required to determine as to the weight of the evidence," and it has been established as a matter of policy that this court will not determine as to the weight of the evidence.

However, this court may, and frequently does, examine the record with the view of determining whether the proper rules as to the weight of the evidence and the degree of proof have been applied. *State* v. *Martin* (1955), 164 Ohio St. 54. And this court will, particularly, examine the record to ascertain whether the rule requiring proof beyond a

reasonable doubt has been followed. *State* v. *Urbaytis* (1951), 156 Ohio St. 271, 277. And, see *State* v. *Winterich* (1952), 157 Ohio St. 414; *State* v. *Petro* (1947), 148 Ohio St. 473; *Atkins* v. *State* (1927), 115 Ohio St. 542, certiorari denied, 274 U. S. 720; *Cole* v. *McClure* (1913), 88 Ohio St. 1; *Ford* v. *Osborne* (1887), 45 Ohio St. 1.

In the framework of the two cases herein, the only pertinent and substantive speed law is that part of R. C. 4511.-21 providing that "no person shall operate a motor vehicle * * * in and upon the streets and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions." See *Swoboda* v. *Brown* (1935), 129 Ohio St. 512.

The proof by the state in these cases—speed of 66 miles per hour—raised a rebuttable presumption in favor of the state that the defendants had exceeded the reasonable or proper speeds, and shifted the burden of going forward with the evidence to the defendants, who then sought to overcome the presumption by evidence tending to prove that the speeds at which they were traveling were reasonable or proper. See *Cleveland* v. *Keah* (1952), 157 Ohio St. 331. However, the burden of proving the commission of the offenses charged beyond a reasonable doubt still remained with the state. The state offered no evidence in either case except the speed of 66 miles per hour, which was 11 miles per hour in excess of the prima facie speed limit applicable to defendants' vehicles.

It is my considered opinion that the evidence as to all of the conditions, the integrated totality of circumstances existing at the time and place each defendant was clocked at 66 miles per hour, overcame the presumption created by the prima facie speed limit and, in the absence of any other evidence by the prosecution, the state failed to prove beyond a reasonable doubt that the speed at which the defendants were operating their vehicles was greater than is reasonable or proper, having due regard to the traffic, surface, and width of the highway and all other conditions in evidence.

In reaching this conclusion, I am cognizant, among other things, that, the highway being divided, there was no opposing traffic; that, it being two-laned in the direction in which each defendant was driving, passing could be accomplished with no danger to any vehicle or person; that, the weather being clear and the road surface dry and in good repair, there was no appreciable danger of loss of control of defendants' vehicles; that, in Neff's case, when the defendant accomplished the passing of the truck, there were no vehicles ahead of him within his view on his side of the median strip; that, in Dohl's case, when he passed the truck and moved back into the driving lane, there was one car within his view ahead of him going in the same direction; that each defendant was an experienced truck driver and each was fully acquainted with the road over which he was operating his vehicle; that in each case the visibility was good at the time of the arrest; that, in Neff's case, except for the speed the highway patrolman would have had no reason to stop the defendant; and that, in Dohl's case, only the speed was that officer's reason for stopping him.

(See the excellent opinion of Guernsey, J., of the Third Appellate District for a unanimous court in *State v. Buckner, supra.* See, also, *State v. Mansfield, supra; State v. Mills,* case No. 1306, unreported decision of the Ninth Appellate District, decided April 19, 1972; *Cuyahoga Falls v. Mash,* case No. 6364, an unreported decision of the Ninth Appellate District, decided November 19, 1969; and *Akron v. Uhl,* case No. 4019, an unreported decision of the Ninth Appellate District, decided June 8, 1949.)

Having concluded that the rule of evidence in criminal cases in Ohio, requiring proof beyond a reasonable doubt as to each essential element of the crime charged, has not been followed in these two cases, resulting in a denial of each defendant's constitutional right to due process and equal protection of the laws, I would reverse the judgment of the Court of Appeals in each case and discharge each defendant.

W. BROWN and P. BROWN, JJ., concur in the foregoing dissenting opinion.